**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CHAD MORRISON,**

       **Petitioner,**

       **v.**

**WARDEN, NOBLE CORRECTIONAL
INSTITUTION,**

       **Respondent.**

       **CASE NO. 2:15-CV-2918
Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Elizabeth P. Deavers**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, has filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the *Petition*, Respondent's *Return of Writ*, Petitioner's *Reply,* and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

Petitioner's *Motion for Judgment*  (ECF No. 9) is **DENIED,** as moot.

### Facts and Procedural History

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On March 19, 2014, the Muskingum County Grand Jury indicted appellant, Chad Morrison, on one count of trafficking in cocaine in violation of R.C. 2925.03, one count of possessing cocaine in violation of R.C. 2925.11, and one count of possession of marijuana in violation of R.C. 2925.11.
>
> On October 22, 2014, appellant pled guilty to the charges pursuant to a plea agreement. The cocaine possession count was reduced from a second degree felony to a third degree felony. By entry filed October 24, 2014, the trial court sentenced appellant to twelve months on the trafficking count and thirty-six months on the cocaine possession count, to be served consecutively, and thirty

days on the marijuana possession count, to be served concurrently, for a total aggregate term of forty-eight months in prison.

Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

"THE PROSECUTOR BREACHED THE PLEA AGREEMENT BY RECOMMENDING MAXIMUM CONSECUTIVE SENTENCES."

II

"APPELLANT WAS DEPRIVED OF HIS RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION, ARTICLE I, SECTION 10, WHEN COUNSEL FAILED TO OBJECT TO THE PROSECUTOR'S VIOLATION OF THE PLEA AGREEMENT."

*State v. Morrison*, No. CT2014-0042, 2015 WL 3385652, at *1 (Ohio App. 5th Dist. May 22, 2015). On May 22, 2015, the appellate court affirmed the judgment of the trial court. *Id*. On September 16, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Morrison,* 143 Ohio St.3d 1466 (Ohio 2015).

On October 16, 2015, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that the prosecutor violated the terms of his plea agreement by recommending that maximum consecutive sentences be imposed (claim one); and that he was denied the effective assistance of counsel because his attorney failed to object (claim two). It is the position of the Respondent that Petitioner's claims are procedurally defaulted and without merit.

2

### Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982 (*per curiam* ) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas. . . ." *Coleman* v. *Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and

the state courts therefore do not decide the claims on their merits, neither may a federal court do so.  In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-- that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule."  *Id*.  Second, the Court must determine whether the state courts actually enforced the state procedural sanction.  *Id*.  Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim.  *Id*.  Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error.  *Id*.  This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level.  *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Constitutionally ineffective counsel may constitute cause to excuse a procedural default.  *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000).  In order to constitute cause, an ineffective

4

assistance of counsel claim generally must "'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'"  *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)).  That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself."  *Edwards,* 529 U.S. at 450–51.  The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and the procedural-default doctrine in *Coleman*: "In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." *Id*., at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting *id*., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by " 'letting the time run' " so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].' " *Id*., at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)

> (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70
> S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

Here, the state appellate court reviewed Petitioner's claim that the prosecutor breached the terms of the plea agreement for plain error, due to Petitioner's failure to object, stating:

> No objection was made to the recommendation. An error not raised in the trial court must be plain error for an appellate court to reverse. *State v. Long*, 53 Ohio St.2d 91 (1978); Crim. R. 52(B). In order to prevail under a plain error analysis, appellant bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error. *Long*. Notice of plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus.

*State v. Morrison*, 2015 WL 3385652, at *2.

The United States Court of Appeals for the Sixth Circuit has held that plain error review does not constitute a waiver of the state's procedural default rules. *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). "[A] state court's plain error analysis does not save a petitioner from procedural default[.]" *Conley v. Warden, Chillicothe Correctional Inst.*, 505 F. App'x 501, 506, unpublished, 2012 WL 58617131 (6th Cir. Nov. 20, 2012) (quoting *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (citing *Scott v. Mitchell*, 209 F.3d 854, 866 (6th Cir. 2000)). *See also Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557

(6th Cir. 2000).  Additionally, "the state procedural rule constituted an adequate and independent ground of decision. Ohio's contemporaneous objection rule has been deemed an adequate and independent state ground in numerous Sixth Circuit decisions."  *Conley*, 505 F. App'x at 506 (citing *Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011).  Further, an appellate court's alternative ruling on the merits does not remove the procedural default, because "'a state court need not fear reaching the merits of a federal claim in an alternative holding.'"  *Conley*, 505 F. App'x at 506 (citing *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998)).

Petitioner may still secure review of this claim on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges.  *See Coleman*, 501 U.S. at 753; *Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003).

As cause for his procedural default, and in habeas corpus claim two, Petitioner asserts the denial of the effective assistance of counsel based on his attorney's failure to object.  *See Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (a claim of ineffective assistance of counsel may constitute cause for a procedural default, so long as the claim has been presented to the state courts and has not been procedurally defaulted) (citing *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986).  The Court therefore will consider the merits of Petitioner's claim of ineffective assistance of counsel.

### Standard of Review

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court described AEDPA as "a formidable barrier to

7

federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, -- U.S. --, --, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA. . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e) (1). Moreover, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d) (1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d) (2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit has explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the

> state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d) (1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular. . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49.  The burden of satisfying the standards set forth in § 2254 rests with the petitioner.  *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous."  *Wiggins v. Smith*, 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409, and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis.  *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc))); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state

9

court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 563 U.S. at 181. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 182.

### Ineffective Assistance of Counsel

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Scrutiny of defense counsel's performance must be "highly deferential." *Id*. at 689.

With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* To establish the second prong of the *Strickland* test, *i.e*., prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because a petitioner must satisfy both prongs of the *Strickland*

test to demonstrate ineffective assistance of counsel, should the court determine that the petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

A prisoner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  The two part test announced in *Strickland* applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel.  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988).   In order to obtain relief, a prisoner raising such a claim must first show that counsel's advice was not within the range of competence demanded of attorneys in criminal cases.  *Hill,* 474 U.S. at 59; *Sparks,* 852 F.2d at 884.

> The second, or "prejudice" requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill,* 474 U.S. at 59; Sparks, 852 F.2d at 884.

### Application

Petitioner argues that the prosecutor breached the terms of his guilty plea by recommending imposition of maximum consecutive terms of incarceration, in violation of the terms of his plea agreement.  According to Petitioner, had he known that the prosecutor would have done so, he would not have pleaded guilty, but would have continued with trial proceedings.  Petitioner also appears to contend that his guilty plea was not knowing, intelligent and voluntary, based on the prosecution's breach of the terms of plea negotiations, and his attorney's failure to object, although he did not raise this same issue in the state appellate court.

11

(*See* ECF No. 6-1, PageID# 98-100.)   Petitioner therefore is precluded from now raising this latter claim in these proceedings.

In order to satisfy the exhaustion requirement in habeas corpus, a petitioner must fairly present the substance of each constitutional claim to the state courts as a federal constitutional claim.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Although the fair presentment requirement is a rule of comity, not jurisdiction, *see Castille v. Peoples*, 489 U.S. 346, 349 (1989); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45, (1999), it is rooted in principles of comity and federalism designed to allow state courts the opportunity to correct the State's alleged violation of a federal constitutional right that threatens to invalidate a state criminal judgment.   In the Sixth Circuit, a petitioner can satisfy the fair presentment requirement in any one of four ways: (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.  *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Further, general allegations of the denial of a constitutional right, such as the right to a fair trial or to due process, are insufficient to satisfy the "fair presentment" requirement.  *Id*.

Petitioner did not make any reference in his state appellate court brief that would have alerted the state appellate court that he intended to raise a claim that his guilty plea was not knowing, intelligent or voluntary.

> To preserve a federal constitutional claim for habeas corpus, the legal and factual basis of the claim must be "fairly presented" to the state courts so that they have an opportunity to remedy the alleged constitutional violation. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). A petitioner must have presented his claims to the state courts "under the same theory in which it is later

> presented in federal court." *Wong v. Money*, 142 F.3d 313, 322
> (6th Cir. 1998). If a habeas petitioner fails to properly raise the
> claim in state court, and state law no longer allows him to raise it,
> the claim is procedurally defaulted. *Williams*, 460 F.3d at 806.

*Lenoir v. Warden, Southern Ohio Correctional Facility*, 886 F. Supp.2d 718, 728 (S.D. Ohio

2012).   He has therefore waived such claim for review.  *See King v. Berghuis*, 744 F.3d 961,

964-65 (6th Cir. 2014) ("There can be no dispute that *Santobello* and *Boykin[ v. Alabama,* 395

U.S. 238 (1969) (involving whether the record reflects that a guilty plea is knowing, intelligent

and voluntary] impose different requirements and that a claim brought under one is not also

brought under the other.") (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 362 (1978) (footnote

omitted)).   In any event, review of the record, as discussed below, fails to support such

allegation.

The state appellate court rejected Petitioner's claim regarding the denial of the effective

assistance of counsel in relevant part as follows:

> To demonstrate ineffective assistance of counsel, appellant must
> establish the following as set forth in *State v. Bradley*, 42 Ohio
> St.3d 136 (1989), paragraphs two and three of the syllabus:
>
> 2. Counsel's performance will not be deemed ineffective unless
> and until counsel's performance is proved to have fallen below an
> objective standard of reasonable representation and, in addition,
> prejudice arises from counsel's performance. (*State v. Lytle* [1976],
> 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v.
> Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674,
> followed.)
>
> 3. To show that a defendant has been prejudiced by counsel's
> deficient performance, the defendant must prove that there exists a
> reasonable probability that, were it not for counsel's errors, the
> result of the trial would have been different.
>
> The written plea agreement filed October 22, 2014 specifically
> states: " * * *the State agrees to make no recommendation and
> defer sentencing to the discretion of the Court. Both parties reserve
> the right to present arguments regarding sentencing at the

sentencing hearing." During the plea hearing, the trial court reiterated this language to appellant and appellant stated he understood. T. at 9. Following the guilty pleas, the trial court proceeded to sentencing, and specifically asked the prosecutor if the state had a recommendation, to which the prosecutor recommended maximum consecutive sentences, "that being one year on the trafficking in drugs, and three years be imposed on the felony 3, for a total of four years." T. at 16.

***

Although appellant argues the prosecutor breached the plea agreement, we find no error. The plea agreement specifically states that while the prosecutor would not recommend a sentence, both parties reserved the right to present arguments regarding sentencing at the hearing. It is unclear as to what the arguments would be. It could very well include the appropriateness of the sentence.

Under the sentencing statutes, it is the trial judge who is required to make the final determination as to sentence, its length, and its consecutive/concurrent nature. "[N]othing binds the court to the recommendations or statements given by the prosecutors at sentencing." *State v. Namack*, 7th Dist. Belmont No. 01 BA 46, 2002–Ohio–5187, ¶ 36.

The case had been at trial for a day; therefore, the trial court had personal knowledge of the state's claims and appellant's defenses via opening statements and some witnesses.

We cannot find that the error complained of negates a voluntary guilty plea that is not contrary to law. We also do not find any suggestion that the trial court's sentence would have been any different. In his appellate brief at 4, appellant argues the trial court "would not have imposed maximum consecutive terms absent the prosecutor's recommendation." There is no evidence in the record to support this argument. Appellant had a lengthy criminal record: "1998, assault and ag menacing; 2001, felony RSP; 2002, OVI; 2005, trafficking in cocaine and possession of cocaine; an RSP that resulted in a five-year sentence; * * *a 2012 domestic violence, and a 2000—another RSP in 2007." T. at 16.

We find the cited case of *State v. Adams*, to be distinguishable from the case *sub judice*. In *Adams*, the prosecutor agreed in writing to "stand silent" during the sentencing hearing, and then volunteered a sentencing recommendation during the hearing. In

14

> this case, there is no agreement in writing to "stand silent," and the prosecutor made a recommendation only after the trial court inquired.
>
> Upon review, we find the prosecutor did not breach the plea agreement, there is no evidence to suggest the sentence would have been any different, and do not find any prejudice to appellant.

*State v. Morrison*, 2015 WL 3385652, at *1-2.

"Prevailing on an ineffective-assistance-of-counsel claim through habeas review is no easy task." *Group v. Robinson*, 1458 F.Supp.3d 632, 651 (N.D. Ohio Jan. 20, 2016). Under the AEDPA, review of such claim must be "'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt.'" *Woods v. Donald*, -- U.S. --, 135 S.Ct. 1372, 1376 (2015) (citations omitted); *Group v. Robinson*, 158 F.Supp.3d at 651 ("The question for a habeas court "is simply whether there is 'any reasonable argument' that counsel's performance was professionally reasonable.") (citing *Davis v. Carpenter*, 798 F.3d 468, 474 (6th Cir. 2015) (quoting *Harrington*, 562 U.S. at 105). Upon review of the record, this Court is not persuaded that Petitioner has met his burden here.

On the second day of his jury trial, Petitioner indicated that he wanted to enter a guilty plea. *Transcript* (ECF No. 6-1, PageID# 161.) Pursuant to the terms of his plea agreement, the prosecutor reduced the charges in Count 2 of the Indictment from a second degree felony, to a third degree felony, (*See* ECF No. 6-1, PageID# 80, 83), thereby reducing Petitioner's potential sentencing exposure. Additionally, Petitioner's written *Plea of Guilty*, which he signed, reflects that he understood that he faced up to 12 months incarceration on Count 1, up to 36 months on Count 2, and up to 30 days on Count 3, and that that the trial court may impose consecutive terms of incarceration. (PageID# 83.) Thus, the plea agreement did not contemplate any specific

term of incarceration by the parties, and Petitioner implicitly acknowledged that he faced

maximum terms of incarceration on the charges alleged.  The *Plea of Guilty* form also indicated:

> The defendant acknowledges that the parties have engaged in plea
> negotiations and the defendant accepts and agrees to be bound by
> the following agreement, which is the product of such negotiations.
>
> Upon a plea of "guilty" to Counts One and Three as contained in
> the indictment and Count Two as amended, the State agrees to
> make no recommendation and defer sentencing to the discretion of
> the Court.  Both parties reserve the right to present arguments
> regarding sentencing at the sentencing hearing. . . .
>
> The defendant further acknowledges that he/she understands that
> the prosecutor's recommendation does <u>not</u> have to be followed by
> the Court.

(PageID# 85.)

Petitioner indicated that he had had plenty of time to discuss the entry of his guilty plea

with his attorney.  *Transcript* (ECF No. 6-1, PageID# 161.)  The prosecutor represented that the

parties had agreed that "they would defer to the Court for purposes of sentencing, and reserve the

right to make arguments at the time of the sentencing."  (PageID# 162-63.)  Defense counsel

agreed to the accuracy of that statement.  (PageID# 163.)  The trial court advised Petitioner of

the charges against him, and of the maximum sentence he faced on each charge.  Petitioner

indicated that he understood.  (PageID# 163-66.)  Petitioner understood the nature of the charges

against him and any possible defenses he had to the charges.  He expressed satisfaction with the

advice and assistance of his attorney.  (PageID# 166-67.)  Petitioner denied being under the

influence of alcohol or drugs.  (PageID# 167.)  Petitioner expressly indicated that he understood

that "both parties reserve the right to present arguments regarding sentencing at the sentencing

hearing." (*Id*.)  He denied being made any other promises or being coerced into entering a guilty

plea.  (*Id*.)  Further, the trial court advised Petitioner of all of the rights he was waiving by entry

of his guilty plea.  Petitioner at all times indicated that he understood.  (PageID# 168-69.)  The

prosecutor recited the facts of the case as follows:

> On March the 12th of 2014, in Muskingum County, Sheriff's Office, in conjunction with the Zanesville Police Department, arranged for a controlled buy of cocaine from the defendant in this matter, Chad Morrison.
>
> Confidential informant was wired and provided with pre-recorded buy money and searched.  He was sent to the residence at 319 Mead Street where the law enforcement officers had received information that the defendant had been selling cocaine and marijuana.
>
> The confidential informant was able to make contact with the defendant, and was able to purchase two grams of cocaine.  This was submitted to BCI and tested positive for cocaine.  The basis of the search warrant was executed on 3-14 of 2014.  There was an attempted buy on 3-10, as well as a successful buy on 3-12.
>
> The Court has had an opportunity to review both of those videos through testimony that has been provided during the course of the trial, and to see all evidence that was the result of those operations.  During the execution of the search warrant, the defendant was arrested, the house was searched, and the area where he was immediately located prior to police conducting the search warrant were 19.32 grams of cocaine, also two cell phones, and digital scales that would be seen being used in previous buys.
>
> The items were submitted to BCI and tested positive for the controlled substance of cocaine.  Also during the course of the State's case, had testimony been presented further, Adam Rogers would have testified that the drugs were, in fact, in the possession of the defendant in this case, Chad Morrison.
>
> There was a sawed-off shotgun that was recovered from an upstairs bedroom that Mr. Rogers testified that was his that was kept in the house for purposes of protecting the products that were being moved in the house on a regular basis.
>
> ***
>
> Mr. Morrison also admitted that all of the marijuana in the house was his, and was greater than 100 grams, and that was also tested.

(PageID# 170-71.)  Thus, it does not appear that the government would have been unable to establish the charges against Petitioner.  To the contrary, there appears to have been substantial evidence of guilt.  Defense counsel asked the Court to take into consideration that Petitioner had accepted responsibility for his actions, and that it was clear from the evidence that other drug trafficking activities were taking place in the house unrelated to the Petitioner.  (PageID# 173-74.)  In response to the trial court's inquiry as to a sentencing recommendation, the prosecutor suggested maximum and consecutive terms of incarceration, or an aggregate term of four years, in view of Petitioner's criminal record.[1]  (PageID# 174.)  Defense counsel argued that the prosecutor's request was not fair or just in view of Petitioner's guilty plea and the mitigating circumstances of the case, reflecting other drug activity in the house unrelated to Petitioner, and as it was clear from the evidence that it was not Petitioner's gun.  (PageID# 175-76.)  When the trial court asked Petitioner if there was anything that he wanted to say on his own behalf prior to sentencing, Petitioner apologized for what he had done and for wasting the State's time. (PageID# 176.)

In *Santobello v. United States*, 404 U.S. 257 (1971), the prosecutor agreed in a plea agreement not to make any recommendation at sentencing, but breached that promise by recommending that the judge impose the maximum sentence. In remanding the case to the state trial court, the United States Supreme Court stated:

> The ultimate relief to which petitioner is entitled we leave to the discretion of the state court, which is in a better position to decide whether the circumstances of this case require only that there be specific performance of the agreement on the plea, in which case petitioner should be resentenced by a different judge, or whether, in the view of the state court, the circumstances require granting

---

[1] Petitioner's sentence of thirty days on Count 3 was ordered to run concurrently to the other sentences imposed.  *Transcript* (ECF No. 6-1, PageID# 178.)

> the relief sought by petitioner, *i.e.*, the opportunity to withdraw his
> plea of guilty.

*Id.*, at 263.  However, "[a] petitioner's entitlement to relief as a result of an alleged broken plea

agreement depends in the main on the precise language of the agreement itself."  *Brown v.*

*McKee*, No. 04-10080, 2007 WL 24215557, at *4 (E.D. Mich. Aug. 27, 2007).  The Sixth Circuit

has explained:

> Although *Santobello* discusses the consequences of a broken plea
> agreement, the case does not amplify the parameters of what
> constitutes a breach. Various circuit court decisions, however, have
> addressed the issue since *Santobello* was decided. This court has
> held that "[p]lea agreements are contractual in nature. In
> interpreting and enforcing them, we are to use traditional principles
> of contract law." *United States v. Robison*, 924 F.2d 612, 613 (6th
> Cir. 1991). One fundamental principle of contract interpretation is
> that "primary importance should be placed upon the words of the
> contract. Unless expressed in some way in the writing, the actual
> intent of the parties is ineffective, except when it can be made the
> basis for reformation of the writing." 11 Williston on Contracts §
> 31:4 (4th ed.2000). Consistent with the principle articulated by
> *Williston,* this court has held that the state will be held to the literal
> terms of the plea agreement. *United States v. Mandell*, 905 F.2d
> 970, 973 (6th Cir.1990) (citing *United States v. Kamer*, 781 F.2d
> 1380, 1387 (9th Cir.1986)).

*Smith v. Stegall,* 385 F.3d 993, 999 (6th Cir. 2004).  In other words,

> [i]n determining whether a plea agreement has been broken, the
> court "should look to what the defendant reasonably understood"
> when he entered into the agreement. *United States v. Herrera*, 928
> F.2d 769, 771 (6th Cir. 1991). The "most persuasive evidence" of
> what a defendant "reasonably appreciated as his bargain is found in
> the plain language of the court-approved agreement." *United States*
> *v. Phibbs*, 999 F.2d 1053, 1081 (6th Cir. 1993).

*United States v. Fields*, 763 F.3d 443, 453 (6th Cir. 2014).

Here, the explicit terms of the plea agreement indicate that, although the prosecutor

agreed to make no "recommendation" and "defer sentencing to the discretion of the Court," the

prosecutor also reserved the right to make arguments regarding the appropriate punishment at the

19

sentencing hearing, which presumably would have involved the prosecutor's assessment of the appropriate sentence in view of the circumstances of the case.  Petitioner also acknowledged he understood that any recommendations by the parties did not have to be followed by the court. Thus, Petitioner was on notice that "the Court [was] not a party to [the plea] agreement and [was] under no obligation to accept any recommendation by the [prosecutor] or the parties regarding the sentence to be imposed."  *United States v. Smith*, 613 F. App'x 522, 526 (6th Cir. 2015) (courts are hesitant to impose obligations on the government unless compelled by the plain text of a plea agreement).  Under these circumstances, this Court cannot conclude that counsel performed in a constitutionally ineffective manner by failing to object to the prosecutor's response to the trial court's inquiry regarding a "recommendation" as to sentencing as in violation of the explicit terms of the plea agreement.

To the contrary, the language of the agreement plainly contemplates that the prosecutor could indeed make "arguments" to the trial court regarding the length of sentence that should be imposed.  Further, the prosecutor made no promises or representations limiting his ability to recommend or argue for a particular term of years, or imposition of maximum consecutive terms of incarceration.  *See Smith v. Stegall*, 385 F.3d at 998 (no breach of plea agreement where prosecutor promised not to recommended a term of life incarceration, but recommended a term of 70 to 100 years).  Moreover, Petitioner acknowledged in his signed guilty plea and at the guilty plea hearing that he understood that he faced maximum consecutive terms of incarceration.  Petitioner explicitly acknowledged that sentencing would be within the discretion of the trial court, and that the prosecutor had reserved the right to "present arguments regarding sentencing" and that any recommendation of the prosecutor did not have to be followed by the court.  Such language can "equally be read as indicating that the parties had not agreed jointly on

a particular sentencing recommendation." *MacArthur v. Curtin*, No. 13-cv-11307, 2014 WL 3767835, at *17 (E.D. Mich. July 31, 2014). Petitioner additionally acknowledged that he understood the maximum sentences he faced, and that such sentences could be imposed consecutively. In view of all of the foregoing, Petitioner's allegation now that he would not have entered a guilty plea, had he known that the trial court might impose a term of 48 months incarceration, is simply not worthy of credit.

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 74 (1977). In applying this standard, courts indulge a strong presumption that statements made by the parties at the plea hearing were truthful. *Id.* at 74. Here, Petitioner's statements indicate that he well understood that no sentence had been agreed upon, that he faced the possible imposition of maximum and consecutive terms of incarceration, and that his sentence was within the sole discretion of the trial court.

Petitioner therefore has failed to establish the denial of the effective assistance of counsel due to his attorney's failure to object to the prosecutor's alleged breach of the terms of the plea agreement. He likewise has failed to establish cause and prejudice for his procedural default of claim one.

## Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

Petitioner's *Motion for Judgment* (ECF No. 9) is **DENIED,** as moot.

**Procedure on Objections**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(b) (1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO ORDERED**.

 _s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge